# State Highway Board v. Ralph L. Jackson and Gladys P. Jackson et al.

[258 A.2d 575]

No. 6-69

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed July 15, 1969

Motions for Reargument Denied October 7, 1969

*James M. Jeffords*, Attorney General, *Louis P. Peck* and *Richard M. Finn*, Assistant Attorneys General, for the State.

*Bernard R. Dick, Abatiell & Abatiell, Kinney & Carbine, George W. F. Cook, O'Neill, Valente & Carroll, Ryan, Smith & Carbine, Angelo J. Spero, Weber & Costello*, Rutland, for appellees. *R. Clarke Smith, Dorothy Deckelmen, Wayne Adams, Albert Kelley, Edward Moore, Edwin Crossman,*

*Robert Pratt, Andrew Sikes, George* and *Dorothy Squier, Eugene* and *Evelyn Daley;* and *Milton A. Squier, pro se.*

**Shangraw, J.** On March 3, 1965 a judgment order was issued by the Rutland County Court relocating a section of U.S. Route 7 and Route 103 in the Towns of Wallingford and Clarendon, Vermont. This relocated route is divided four lane highway. It runs approximately parallel with the old route and has 18 points of private access and 8 public grade intersections in the area here involved. The new highway consists of about five miles of state highway and was opened for general traffic on November 15, 1967.

By virtue of 19 V.S.A. Section 1861a, the State Highway Board, with the approval of the Governor, has designed and established certain portions of the new U.S. Route 7 and Vt. Route 103, in the Towns of Wallingford and Clarendon, as a limited access highway facility.

The pertinent provisions of section 1861a, *supra,* provide:

> The board with approval of the governor, *** may plan, designate, establish, construct, regulate, vacate, alter, improve, maintain and provide limited access facilities for public use wherever the board, with the approval of the governor decides that the protection of existing businesses or traffic conditions, present or future, will justify the special facilities.

In the construction of the new highway, and by agreement with the abutting land owners, the State Highway Board, at the State's expense graded or constructed the 18 private driveways, each to serve as an access to and from the new highway involved.

In its petition, the State Highway Board represents that all lands presently abutting the new highway, and all property rights and other interests on and in such lands, presently have rights of access to and from said highways and such rights of access are property rights. In connection with the designation and establishment of the new route as a limited access facility, petitioner also represents that it is necessary to acquire, on behalf of the State of Vermont, the rights of access to and from said highways, which presently exist in favor of the lands and other property interests abutting these highways.

It is conceded by the petitioner that the 8 public grade intersections will not be shut off from the general circulation of traffic.

By virtue of the designation and establishment of the new route by the State Highway Board, with the approval of the Governor, as a limited access highway facility, petitioner alleges that traffic conditions, present and future, justify the designation and establishment of portions of the highway as limited access highway facilities, and that the acquisition of access rights is necessary.

Under the provisions of section 1861a, the designation and establishment of the new route as a limited access highway facility is dependent upon whether "the protection of existing businesses or traffic conditions, present or future, will justify the special facilities."

The court, and parties, considered that the proceeding was brought pursuant to the provisions of 19 V.S.A. section 1861a. A contested hearing was held, following which findings of fact were made, and the petition dismissed by a judgment order dated December 27, 1968.

Petitioner has appealed to this Court for review. It urges the following errors in support of a reversal of the judgment, or in the alternative, a remand for a new hearing.

1. The Court's findings that existing businesses would not be protected by making this section of U.S. 7 and Route 103 a limited access facility is not supported by the evidence.

2. The Court's findings that traffic conditions either present or future, do not justify a limited access facility is not supported by the evidence.

3. The Court failed to make findings on the critical element of public safety as requested by Petitioner, and the failure to so find, in view of the evidence on said issue, is error.

Exclusive of farms, there is only one business, known as "The Sugar House" situated on the northern end of the project involved. This business has a one-way access to the new highway. On this new route there are two rest areas together with acceleration and deceleration lanes.

As of July 25, 1968 there were 25 businesses on the old Route #7 in the area here involved which advertised their businesses on the property. Twelve of these were located in the village of North Clarendon which is immediately north of the project now considered.

The source of business on old Route #7 is primarily traffic volume. These businesses lost a substantial amount of traffic business when the new highway opened in November, 1967.

The court, by its findings, places considerable emphasis on the fact that after the new highway was constructed, and in use, a large portion of the traffic has been diverted from the businesses located on the old route.

In the present aspect of the case we are now concerned with what unfavorable effect, if any, will result, in the future, on these businesses provided the new highway is made a limited access facility. It is the appellants claim that the limited access facility on the new highway will protect the existing businesses on the old Route #7 by preventing competition on the new highway.

Appellant calls attention to finding No. 17 which reads:

That the Court is unable to find by a preponderance of the evidence, and hence, does not find, that the making of a new Route #7 as a limited access facility will protect the existing businesses on old Route #7, but rather the Court finds that the traffic on old Route #7 will remain as at the present, or be reduced substantially if the public grade intersections are closed and substituted by two interchanges, one at Pierce's Corner, so-called, and one at the southern end of the project.

We also refer to finding No. 33 which states:

That the Court is unable to find by a preponderance of the evidence, hence does not find, that the existing businesses on new Route #7 or old Route #7 would be protected by the establishment of a limited access facility on new Route #7.

By finding No. 17 the court took into consideration the possibility that the existing public grade intersections would be closed and substituted by two interchanges. This finding is inconsistent with finding No. 6 which reads:

That the State Highway Board, the petitioner, concedes and agrees that in the event limited access facility were granted in this case, that the 8 public grade intersections would not be shut off from the general circulation of traffic. (Stipulation.)

The appellant next challenges Findings of Fact No. 34 wherein the court states that it was unable to, and did not find, that traffic conditions, either present or future, justify the limited access facility now considered. It is claimed that this finding is not supported by the evidence. In Finding Nos. 24 and 25, the court found as follows:

24) That new Route 7 was designed as a non-limited access highway, and was designed for a capacity of 9 and 10 thousand vehicles per day north of the intersection of 103 and 4,700 vehicles south of the intersection.

25) That the new Route 7 highway as of the present time will adequately carry the present traffic there involved and is designed to carry approximately twice the amount of said traffic.

Aside from the matter of safety, evidence was introduced that the State of Vermont has invested in this highway about $3,500,000.00, and if continued as a non-limited access facility, it will become obsolete as an efficient traffic bearing artery.

Gordon Lane, State Highway Engineer, testified that this obsolescence will result by reason of the fact that the highway will gradually lose its capacity to carry the amount of traffic it is designed for, due to the fact that in addition to the presently existing entrances, other entrances would tend to develop over the years, slow down traffic, and create many traffic hazard locations.

This witness further testified that he had looked over the terrain along the new highway, was familiar with its design and construction, and that there were many places along the highway which could be adopted to filling stations, motels, and other commercial type eating places, and garages, all of which would require entrances into the highway.

Appellant requested the following finding No. 12 which was not complied with by the court.

Limiting access to the new Route U.S. 7 will protect the existing businesses by preventing new competition to come into existence on the new highway.

In support of the above request, Arthur Goss, State Engineer, testified that no businesses would be allowed on the new highway, if made a limited access road, and that businesses on the old road would be protected.

Gordon Lane also testified, that by reason of a study made of interstate highways, businesses and traffic build up on the old roads by reason of the service available there, and not present on limited access highways.

At the time of hearing, the new highway had been open for use a period of slightly in excess of six months. During this period nine accidents occurred, four at public grade intersections and five on straight sections of the highway, which, the court found, would be unaffected by the road being maintained as a limited access facility. None of the accidents took place at an intersection of the highway with a private access. The court also found that the accident ratio per 100 million vehicle miles on the new highway was 243, as compared with the interstate accident ratio in Vermont of 162.

The appellant further challenges the failure of the court to make a finding on the critical element of public safety as requested by it, and that the failure to so find, in view of the evidence on this issue, is error.

■■ No one will deny the importance of highway safety. Limited access facilities are designed to protect accident points in a highway and provide for greater safety and efficiency of a highway. As stated in *Latchis* v. *State Highway Board*, 120 Vt. 120, 125, 134 A.2d 191, "In determining whether a reasonable necessity exists with respect to highways, public safety has become the critical element." This doctrine has been affirmed in *State Highway Board* v. *Coburn, et al.*, 125 Vt. 513, 517, 219 A.2d 582, and *State Highway Board* v. *Pratt and Jensen, et al.*, 127 Vt. 385, 250 A.2d 726, 731.

The State, through its engineer, Gordon Lane, developed evidence to the effect that a limited access highway is unquestionably a safer highway than a non-limited access, and

that a vehicle turning in or out of a private access would create a traffic hazard.

Arthur Goss also testified that the highway should be able to carry traffic in the future as a high speed highway and that the possibility of vehicles coming out at numerous private points along the highway would constitute a safety hazard.

The proposed project is a part of the arterial highway system designed by the General Assembly. Northerly thereof, and leading to Rutland, Vermont, is a limited access facility. It is also planned that Route 7, southerly of the highway now considered, is also to be a limited access facility when it is reconstructed. With this in mind, Arthur Goss testified that it would be dangerous for vehicles traveling from one stretch of the road that is limited access to another that is non-limited access.

The aspects of existing businesses have been explored by the parties in their briefs, and for this reason we have, in this opinion, commented on the evidence and certain findings to some length, as they relate to this feature of 19 V.S.A. section 1861a. We do however call attention to the fact that the language of section 1861a is stated in the alternative, —that is "*** the protection of existing businesses or traffic conditions, present or future will justify the special facilities."

■ The overriding policy as expressed by the legislature in 19 V.S.A. section 1861 relating to limited access facilities is concerned with "*** the public peace, health, and safety, and for the promotion of the general welfare." We conceive that these considerations on the question of necessity outweigh the legislative concern for existing businesses.

■ Even if the evidence offered under the petition with respect to the protection of existing businesses was as indefinite and conflicting as the court below seems to have found it, that consideration cannot govern the result in the presence of demonstrated necessity in terms of traffic safety.

The state highway board requested the lower court to make specific findings on the issue of public safety. The requests were founded on expert engineering and statistical evidence on the issue of highway safety. Despite these requests, the lower court restricted its findings on this phase of necessity to the accident experience of the present highway

during the short period between November 1967 and July 1968. The findings report that there have been nine accidents with no fatalities on the project during this period. The court also concluded that none of the accidents was caused primarily by road design, but the major factor was the driver's fault. Against this, the lower court unfavorably compared the accident ratio on new U.S. Route #7 of 243 with the 1967 experience on interstate limited access highways in Vermont reported at 162.

█ In the presence of the undisputed engineering testimony of the necessity, for reasons of safety, to convert the present highway to a limited access facility, the lower court's statement that it "is unable to find by a preponderance of the evidence, and hence does not find, that the traffic conditions either present or future, as now projected on new Route #7 justify a limited-access facility" is not supported by the record. A finding which is not in accord with the facts as shown by the record is to be disregarded. *In re Taconic Racing and Breeding Association,* 125 Vt. 76, 80, 209 A.2d 492; *Russell* v. *Barre Plywood Co.,* 116 Vt. 40, 48, 68 A.2d 691.

This leaves the finding crucially deficient on the essential issue of highway safety. The shortage also deprives the judgment order of intrinsic support, rendering it unsound in law. The judgment must be reversed. The majority of the Court is of the opinion that the shortage in the findings on the essential issue of public safety cannot be supplied in this Court. *Longchamp* v. *Conti,* 115 Vt. 492, 493, 66 A.2d; See also *Platt, Admx.* v. *Shields,* 96 Vt. 257, 271, 119 A. 520. The cause will be remanded for this purpose and may be reopened on this limited issue to receive further evidence on this point in the light of more recent experience.

*Judgment reversed and cause remanded for the further proceedings indicated in the opinion.*

**Shangraw, J.,** (dissenting in part). I cannot agree that there should be a remand on the issue of public safety. On the contrary it is my judgment that the record demonstrates that the limited-access facility in question affords protection to existing businesses, as well as to provide for public safety.

For these reasons I would reverse the judgment and remand the case for a new judgment order in favor of the appellant.

Paragraph 1 of the Findings of Fact states, "That this proceeding is brought pursuant to Title 19, Section 1861a of V.S.A., and all parties agree that the only issues involved in this petition is (sic) whether a request for limited access facility in the project here involved is justified either by protecting existing businesses or by traffic conditions present or future." The case was tried on this theory. In *Merrill* v. *Reed,* 123 Vt. 248, 185 A.2d 737, at page 252, we held that "where it appears from the record that the trial below proceeded upon a certain theory, acquiesced in by court and counsel, the theory thus adopted, whether right or wrong, becomes the law of the case. *Leno* v. *Meunier,* 125 Vt. 30, 32, 33, 209 A.2d 485.

Appellee's evidence on the issue of traffic conditions is limited to a six month's period. It merely concerns the absence of accidents at points of private access, and, that at the time of trial, the maximum traffic load of the highway had not been fully utilized. The findings and judgment order completely disregards the overpowering evidence introduced by the State, and undisputed, concerning projected traffic conditions, obsolescence of the highway if it remains a non-limited-access highway, and its safety aspects if converted into a limited-access facility.

I fully appreciate that it is not the province of this Court to make findings. A lower court's findings must stand if there is any evidence fairly and reasonably tending to support them. *Leno* v. *Meunier,* 125 Vt. 30, 34, 209 A.2d 485; *Murray* v. *Webster,* 123 Vt. 194, 196, 186 A.2d 89. I believe that "any" means more than a scintilla of evidence. Appellees' evidence generates no probative value of any consequence, as against the compelling and uncontroverted expert testimony produced by the State as revealed in the opinion. The state's evidence is so strongly in its favor as to leave no reasonable basis for a judgment, other than in its favor.

The opinion suggests a remand on the issue of public safety. I suggest that traffic conditions and public safety are closely entwined. Regardless of whether an attempt is made to differentiate between the two—you end up with the same horse—that is safe traffic conditions. This issue was fully

explored during the hearing below, and so considered as the heart of the case by the parties and the court.

Moreover, there appear to be compelling reasons why this litigation should be brought to an end by an appropriate order on the part of this Court. The present plan of the highway board calls for a limited-access highway on Route 7 southerly of Rutland, Vermont. It is my view that a retrial, and a rehash of what is likely to be, at least in substance, the same evidence now present in the case, is not justified, and will not be conducive to the public interest. The parties have had their day in court.

It is my judgment that there is ample evidence in the case to justify a reversal and a new Judgment Order in favor of the State Highway Board.